# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NARESH KUMAR,** | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| | : | **NO. 25-6238** |
| **v.** | : | |
| | : | |
| **BRIAN McSHANE,** *et al.*, | : | |
| *Respondents.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                          DECEMBER 23, 2025

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is Petitioner Naresh Kumar's ("Mr. Kumar" or "Petitioner") petition for a writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241, which challenges his detention by the Department of Homeland Security (DHS). (ECF 1). In his petition, Mr. Kumar contends, i*nter alia*, that he is charged with entering the United States without admission or inspection, is being unlawfully detained, and that he should either be released or provided a bond hearing. (*Id.*). The Government[1] opposes the petition on several grounds. (ECF 6). The issues have been fully briefed and are ripe for disposition.[2] For the reasons set forth herein, Petitioner Kumar's *habeas* petition is granted.

---

[1]    Kristi Noem, Secretary, DHS; Pamela Bondi, U.S. Attorney General; and Jamal Lawrence, Warden of Philadelphia Federal Detention Center.

[2]    The Court has also considered Petitioner's reply. (ECF 7).

**FACTUAL BACKGROUND**

The relevant facts gleaned from the pleadings, and not disputed by the Government, are as follows:

Mr. Kumar is a citizen and national of India. (ECF 1 at ¶ 15). On May 31, 2024, Mr. Kumar entered the United States via Canada at a location not designated as a place of entry and was apprehended by the United States Custom and Border Protection ("CBP") in New York. (*Id.* at ¶45; ECF 1-3). On that same day, CBP voluntarily released Mr. Kumar on his own recognizance pursuant to Section 236 of the Immigration and Nationality Act ("INA") and scheduled a removal hearing for February 24, 2026, at an immigration court in Philadelphia, Pennsylvania. (ECF 1-3, 1-4, 1-5, 1-6). Prior to his detention, Mr. Kumar lived in Aldan, Pennsylvania. (ECF 1 at ¶ 43). On October 31, 2024, Mr. Kumar filed a petition for asylum. (*Id.* at ¶ 48).

On October 28, 2025, ICE detained Mr. Kumar during a routine check-in and placed him at the Federal Detention Center ("FDC") in Philadelphia. (*Id.* at ¶ 47; ECF 6 at p. 4). His detention was apparently pursuant to the following DHS policy:

"On July 8, 2025, [DHS] . . . instituted a notice titled 'Interim Guidance Regarding Detention Authority for Applicants for Admission' to all [United States Immigration and Customs Enforcement ("ICE")] Employees." *Vazquez v. Feeley*, No. 2:25-cv-01542, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025) (Boulware, J.). "Under [this] new interpretation and policy, individuals 'present in the United States without admission or parole' are now treated as 'applicants for admission' subject to mandatory detention under [Section] 1225(b)(2), rather than discretionary detention under [Section] 1226(a)." *Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *2 (D.N.J. Oct. 22, 2025) (citation omitted). "[N]early all noncitizens who have never been admitted, regardless of whether they were stopped at the border or arrested years later inside the country, are now classified as an 'applicant for admission' that is 'seeking admission' into the country under [Section] 1225(b)." *Id.*

"On September 5, 2025, the Board of Immigration Appeals (BIA) in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), agreed with DHS's interpretation and found the INA requires that all applicants for admission who have entered without admission or inspection, including those who have been residing in the United States for years without lawful status, are subject to mandatory detention without bond under [Section] 1225(b)." *Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307, at *2 (E.D. Pa. Nov. 19, 2025).

Since being detained, Mr. Kumar has not been provided an opportunity to post bond. (ECF 1 at ¶ 50; ECF 6 at p. 4). On November 3, 2025, Mr. Kumar filed the underlying petition. On November 7, 2025, this Court entered an Order requiring the Government to respond to Mr. Kumar's petition by November 17, 2025. (ECF 2). On November 17, 2025, the Government filed an answer/response to the *habeas* petition. (ECF 6). Mr. Kumar filed a reply on November 19, 2025. (ECF 7).

**LEGAL STANDARD**

A federal district court is authorized to grant a writ of *habeas corpus* under 28 U.S.C. § 2241 when the petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). The burden is on a petitioner to show that he is in custody in violation of the Constitution and/or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941). Further, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in deportation proceedings. *See Serrano-Alberto v. AG United States*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law . . . .").

**DISCUSSION**

In his *habeas* petition, Mr. Kumar contends that his detainment violates: (1) Section 236(a) of the INA (8 U.S.C. § 1226(a)); (2) various regulations, including 8 C.F.R. §§ 236.1, 1236.1, and 1003.19; and (3) the Due Process Clause of the Fifth Amendment. (*Id.* at ¶¶ 52-64). Mr. Kumar further contends that such violations require his immediate release from detention, or, at a minimum, a bond hearing pursuant to Section 1226(a). (*Id.* at p. 14-15). Mr. Kumar bears the burden of showing that confinement is unlawful. *Hawk v. Olson,* 326 U.S. 271, 279 (1945); *accord Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (habeas petitioner carries burden of proof); *see* 28 U.S.C. § 2241.

In its response, the Government disagrees with Petitioner's argument and argues that this Court should deny Mr. Kumar's petition on the following grounds:  (1) lack of jurisdiction to consider the petition arguing that a petition for review should have gone first to an immigration-court decision and appealed directly to the United States Court of Appeals for the Third Circuit, (the "Third Circuit") ; (2) Mr. Kumar's failure to exhaust his administrative remedies; (3) the Government's lawful detention of Mr. Kumar was made pursuant to Section 1225(b)(2); and (4) Mr. Kumar's failure to demonstrate a deprivation of due process.  (ECF 6 at pp. 6-23).  Each of these arguments will be addressed separately.

### *Jurisdiction*

The Government argues that this Court lacks jurisdiction to hear and decide the *habeas* petition and relies on three provisions of the INA; *to wit*:  8 U.S.C. § 1252(g); § 1252(b)(9); and § 1252(a)(2)(B)(ii).  The Government's arguments are unpersuasive.

Undisputedly, federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Among this limited jurisdiction is the authority to review a *habeas* petition and grant *habeas* relief to any person in custody "under or by color of the authority of the United States" or "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(1), (3).  *See also Walker v. Johnston*, 312 U.S. 275, 286 (1941). Mr. Kumar argues that the right to challenge confinement through a writ for *habeas corpus* extends to individuals challenging their immigration custody detention.  *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510 (2003); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001) ("the writ of *habeas corpus* has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.").  Although Congress

may set limits on federal jurisdiction, courts "construe jurisdiction-stripping provisions narrowly[.]" *Novo Nordisk Inc. v. Sec'y United States HHS*, 154 F.4th 105, 111 (3d Cir. 2025).

Additionally, "[a]gency action is presumptively subject to judicial review." *Id.* Notably, "[t]he INA limits judicial review in several ways." *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020). Sections 1252(b)(9) and 1252(g) "funnel removal-related claims away from district courts and into a petition for review in a single court of appeals[,]" *Tazu v. AG United States*, 975 F.3d 292, 296 (3d Cir. 2020), and Section 1252(a)(2)(B)(ii) precludes review of certain discretionary decisions of the Attorney General or the Secretary of Homeland Security, *Geda v. Dir. United States Citizenship & Immigr. Servs.*, 126 F.4th 835, 843 (3d Cir. 2025). However, none of these limitations on judicial review apply here. As such, it is apparent that this Court has jurisdiction to decide the *habeas* argument presented.

### *Section 1252(b)(9)*

The Government argues this Court lacks jurisdiction under § 1252(b)(9) because the proper venue for this type of claim lies with the circuit court via a petition for review. A petition of review provides "'judicial review of all decisions and actions leading up to or consequent upon final orders of deportation, including 'non-final order[s].'" *Reno v. AADC*, 525 U.S. 471, 483, 485 (1999). The Government cites to *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018), in support of its position, arguing that while § 1252(b)(9) "may not bar claims challenging the *conditions or scope* of detention of aliens in removal proceedings, it does bar claims 'challenging the decision to detain them in the first place.'" (ECF 6 at p. 9). The Government recognizes that Mr. Kumar does not necessarily challenge their initial decision to detain him but rather challenges the legal authority to detain him without the opportunity for a bond hearing.

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only on judicial review of a final order" of removal and that "no court shall have jurisdiction, by *habeas corpus* under [28 U.S.C. § 2241] or any other *habeas corpus* provision . . . to review such an order or such questions of law or fact." 8 U.S.C. § 1252(b)(9). The plurality in *Jennings* "cautioned that the phrase 'order of removal' should be narrowly construed," and "[w]here the petitioner is not 'asking for review of an order of removal' or 'challenging any part of the process by which their removability will be determined . . . § 1252(b)(9) does not present a jurisdictional bar.'" *Quispe-Ardiles v. Noem*, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025) (quoting *Jennings*, 583 U.S. at 294-95 (plurality opinion)). It "does not reach 'claims that are independent of, or wholly collateral to, the removal process,' like 'claims that cannot effectively be handled through the available administrative process.'" *E.O.H.C.*, 950 F.3d at 186 (quoting *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007)). As such, Section 1252(b)(9) does not strip this Court of jurisdiction over this case.

Here, Mr. Kumar challenges the denial of a bond hearing upon his detainment. Pursuant to the Rules of Procedure promulgated by the Executive Office for Immigration Review, bond hearings are "separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding[,]" 8 C.F.R. § 1003.19(d), thus making bond hearings "independent of" and "collateral to" the removal process. *E.O.H.C.*, 950 F.3d at 186. Moreso, should Mr. Kumar's final removal be ordered, courts could not meaningfully redress his purportedly unlawful denial of release on bond after a final order of removal has been entered. As such, Section 1252(b)(9) does not bar this Court's review of Mr. Kumar's detention without a bond hearing.

*Section 1252(g)*

The Government argues that Section 1252(g) bars judicial review of this *habeas* petition because the Attorney General's and DHS's discretion to commence and adjudicate a removal proceeding includes "decision to take him into custody and to detain him during his removal proceedings," *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016), and other district court decisions not arising in the Easter District.  (ECF 6 at p. 7).  Thus, for the government "to prevail [on jurisdictional grounds] it must overcome . . . the strong presumption in favor of judicial review of administrative action . . . ." *INS*, 533 U.S. at 298.

Section 1252(g) provides that, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  Section 1252(g) "reaches only these three specific actions, not everything that arises out of them." *Tazu*, 975 F.3d at 296.  The Third Circuit – as well as other circuit courts – has held that Section 1252(g) is to be interpreted "narrowly and precisely" to prevent review only of the three narrow discretionary decisions or actions referred to in the statute. *See Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009) (holding that the jurisdiction stripping provision of Section 1252(g) was not applicable where the petitioner was challenging the government's authority to commence removal proceedings, but not their discretionary decision to commence those proceedings).

Here, Mr. Kumar challenges the Government's action to detain him without providing a bond hearing, not the detention itself or any of these three specific actions spelled out in Section 1252(g).  As such, this Court finds Section 1252(g) inapplicable and does not bar this Court's review of Mr. Kumar's petition.

*Section 1252(a)(2)(B)(ii)*

The Government argues this Court lacks jurisdiction under § 1252(a)(2)(B)(ii) because "no court shall have jurisdiction to review" the discretionary decision made by the Attorney General or the Secretary of Homeland Security.  8 U.S.C. § 1252(a)(2)(B).

Specifically, section 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under [the provision allowing asylum applications]."  8 U.S.C. § 1252(a)(2)(B)(ii).

As noted, Mr. Kumar challenges the Government's authority to detain him without a bond hearing; an argument that is "not a matter of discretion."  *Zadvydas*, 533 U.S. at 688.  Either the Government is mandated to detain Mr. Kumar pursuant to Section 1225(b), or it is required to give him a bond hearing upon request pursuant to Section 1226(a), *see* 8 C.F.R. §§ 1236.1(c)(8), (d).  Because Section 1252(a)(2)(B)(ii) does not apply, this Court may review Mr. Kumar's *habeas* petition.

*Exhaustion*

The Government also argues that Mr. Kumar has not properly exhausted his administrative remedies before seeking *habeas* review.  Generally, petitioners seeking *habeas* review pursuant to § 2241 "are ordinarily required to exhaust their administrative remedies[.]"  *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).  Exceptions exist, however.  Petitioners "need not exhaust administrative remedies where "the issue presented involves only statutory construction."  *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012).  Additionally, "where

exhaustion is not clearly mandated by statute, a futility exception exists." *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003). Both exceptions apply here.

Here, there are no applicable statutory exhaustion requirements related to Petitioner's claim. Indeed, the issue in this case hinges on the statutory construction of Sections 1225 and 1226. Any effort by Mr. Kumar to exhaust administrative remedies through an immigration judge and the BIA would be futile as the BIA's decision in *Hurtado*, 29 I. & N. Dec. at 225, is binding on immigration court proceedings and precludes an administrative remedy. Thus, Mr. Kumar is not required to exhaust any of his claims.

### *Wrongful Detention*

Mr. Kumar argues that he is being wrongfully detained and is being denied a bond hearing pursuant to Section 1226(a). Specifically, Section 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. When the Government detains an alien under Section 1226, the alien has due process rights, including a right to an individualized detention determination and a bond hearing. *See* 8 C.F.R. § 1236.1(c)(8), (d). This is in line with the Due Process Clause which applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

The Government, relying on the BIA's interpretation of "seeking admission" under Sections 1225(b)(2) and *Hurtado*, 29 I. & N. Dec. at 221,[3] argues that Mr. Kumar is subject to

---

[3] This Court need not defer to the BIA's interpretation of Section 1225(b)(2). *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024) (noting that "agencies have no special competence in resolving statutory ambiguities" but "[c]ourts do"). As of November 18, 2025, Judge Diamond cataloged at least 288 district court decisions that addressed this same issue, and 282 of these decisions have rejected the Government's interpretation of the INA. *Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-cv-5488, 2025 WL 3218243, at *1 (E.D. Pa. Nov. 18, 2025) (Diamond, J.). As of December 10, 2025, at least twelve courts within the Eastern District of Pennsylvania have declined to adopt the Government's interpretation

mandatory detention pursuant to Section 1225(b)(2). The Government is mistaken. Specifically, Section 1225(b)(2) applies to undocumented individuals (aliens) seeking entrance into the United States. *See Jennings*, 583 U.S. at 303 ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under [Sections] 1225(b)(1) and (b)(2)."). The Government's attempts to complicate the issue in this case are, however, ineffective. Congress saw a difference between noncitizens who are seeking entry into the United States and those that are already in the country.[4] This Court does too. Because this Court finds that Mr. Kumar's detention is subject to Section 1226(a) and the Government has failed to provide a bond hearing upon his detention, Mr. Kumar is entitled to relief.

### *Section 1225(b)(2)*

Section 1225(b)(2) provides that: "[I]n the case of an alien who is an <u>applicant for admission</u>, if the examining immigration officer determines that an alien <u>seeking admission</u> is not clearly and beyond a doubt entitled to be admitted, <u>the alien shall be detained</u> for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2) (emphasis added). Under this statutory

---

of Section 1225(b)(2). *See Cantu-Cortes v. O'Neill, et al.*, No. 25-cv-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025) (Kenney, J.); *Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025) (Wolson, J.); *Demirel*, 2025 WL 3218243; *Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025) (Sánchez, J.); *Patel v. McShane*, No. 25-cv-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025) (Brody, J.); *Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia*, No. 25-cv-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025) (Rufe, J.); *Morocho v. Jamison*, No. 5:25-cv-5930, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025) (Gallagher, J.); *Diallo v. O'Neill*, No. 25-cv-6358, 2025 WL 3298003 (E.D. Pa. Nov. 26, 2025) (Savage, J.); *M-L-Z- v. Noem, et al.*, No. 25-cv-5479, 2025 WL 3470046 (E.D. Pa. Dec. 2, 2025) (Baylson, J.); *Velazquez v. O'Neill*, No. 25-6191, 2025 WL 3473363 (E.D. Pa. Dec. 3, 2025) (Henry, J.); *Nogueira-Mendes v. McShane, et al.*, No. 25-cv-5810, 2025 WL 3473364 (E.D. Pa. Dec. 3, 2025) (Slomsky, J.); and *Pereira v. O'Neill, et al.*, No. 25-cv-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025) (Marston, J.).

[4]  The Supreme Court of the United States has identified a distinction between Sections 1225(b) and 1226(a): "U.S. immigration law authorizes the Government to detain <u>certain aliens seeking admission into the country</u> under [Sections] 1225(b)(1) and (b)(2). It also authorizes the Government to detain <u>certain aliens already in the country</u> pending the outcome of removal proceedings under [Sections] 1226(a) and (c)." *Jennings*, 583 U.S. at 289 (emphasis added). However, the Court has not defined "seeking admission," thus requiring an independent statutory interpretation.

language, an "applicant for admission" is subject to Section 1225(b) if they are found to be "seeking admission." *See also Jennings*, 583 U.S. at 297 (emphasis added) ("[Section] 1225(b) applies primarily to aliens seeking entry into the United States.").

The statute defines "an applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). The statute also defines "admitted" and "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Because Mr. Kumar entered the United States without inspection, he falls under the definition of "applicant for admission."

However, the INA does not define the phrase "seeking admission." This Court relies on Judge Wolson's well-reasoned analysis of the plain meaning of the text, statutory context, and legislative history of Section 1225(b) to define "seeking admission" to mean "physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization." *See Kashranov*, 2025 WL 3188399, at *6-7. Mr. Kumar has clearly sought admission when he arrived at the Canadian-New York border on May 31, 2024. The Government detained and released Mr. Kumar the same day,[5] and Mr. Kumar has been living in the United States ever since. Given that Mr. Kumar is no longer "seeking admission" into the United States, he is not subject to Section 1225(b)(2) and, thus, cannot be detained without a bond hearing.

### *Section 1226(a)*

As noted, Section 1226 "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. Section 1226(a) provides discretionary authority to arrest and detain a noncitizen

---

[5] Notably, the Government's discretionary release of Mr. Kumar in 2024 was "[i]n accordance with section 236 of the Immigration and Nationality Act[.]" (*See* ECF 1-4).

11

"pending a decision on whether [they are] to be removed from the United States." 8 U.S.C. § 1226(a). This section further provides:

> Aliens who are arrested and detained may generally apply for release on bond or conditional parole. [8 U.S.C.] §1226(a)(2). To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings. 8 CFR §§ 236.1(c)(8), 1236.1(c)(8) (2020); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999). If DHS denies the alien's request, the alien may request a bond hearing in front of an immigration judge by filing an application for a change in the alien's detention conditions. *See* 8 CFR §§236.1(d)(1), 1003.19(a), 1236.1(d)(1). Either the alien or DHS may appeal the immigration judge's decision to [BIA]. *See* 8 CFR §§236.1(d)(3)(i), 1003.19(f), 1236.1(d)(3)(i).

*Johnson v. Guzman Chavez*, 594 U.S. 523, 527-28 (2021) (footnote omitted).

Here, ICE agents arrested and detained Mr. Kumar during a routine check-in with ICE in the United States and while his removal proceedings were pending. Under these circumstances, Section 1226(a) applies. Accordingly, Mr. Kumar is entitled to an opportunity to apply for release on bond.

### *Due Process Violation*

Finally, Mr. Kumar argues that his continued detention without a bond hearing violates his rights under the Due Process Clause of the Fifth Amendment of the U.S. Constitution.. This Court agrees.

"[The] Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To determine whether Mr. Kumar, who is a person within the United States, has been denied due process, this Court looks to and applies the *Mathews v. Eldridge* balancing test and weighs the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards; and finally,

the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976).

As for the *Mathews* private interest factor, Mr. Kumar's freedom, is weighty here. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 695 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Thus, the first factor of private interest weighs heavily in Mr. Kumar's favor.

The second *Mathews* factor — the risk of an erroneous deprivation of Mr. Kumar's rights also weighs in his favor. Mr. Kumar's removal hearing is scheduled for February 26, 2026. Without a bond hearing, Mr. Kumar could be subject to months of unlawful detention prior to his removal hearing. Unlawful detention for that period of time is a high risk of an erroneous deprivation of Mr. Kumar's liberty.

Finally, although "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature[,]" *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), a bond hearing would not impose additional administrative burdens on the Government's interests as Section 1226(a) already allows Mr. Kumar to apply for release on bond, *see Johnson*, 594 U.S. at 527. Because the *Mathews* factors weigh heavily in Mr. Kumar's favor, his detention violates his due process rights under the Fifth Amendment, and he is entitled to immediate release.

**CONCLUSION**

Based on the reasons set forth, Court finds that it has jurisdiction over this *habeas* petition. Further, as a general matter, a *habeas* court has "the power to order the conditional release of an

individual unlawfully detained — though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). Because the Government detained Mr. Kumar without allowing for a bond hearing pursuant to Section 1226(a) and the Due Process Clause of the Fifth Amendment, this Court finds that Mr. Kumar current detainment is unlawful and violated the INA and the Due Process Clause of the Fifth Amendment of the United States Constitution. Accordingly, Mr. Kumar's *habeas* petition is granted, and a bond hearing shall be provided to Mr. Kumar immediately, no later than five days from the date of the Court's Order. Failure to provide the bond hearing will result in Mr. Kumar's immediate release. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.