IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NARESH KUMAR,** | : | CIVIL ACTION |
| *Petitioner*, | : | |
| | : | NO. 25-6238 |
| v. | : | |
| | : | |
| **BRIAN McSHANE,** *et al.*, | : | |
| *Respondents*. | : | |

# ORDER

**AND NOW**, this 23rd day of February 2026, upon consideration of Petitioner Naresh Kumar's, ("Petitioner" or "Mr. Kumar"), *motion to enforce* this Court's December 23, 2025 Order, (ECF 21), and Respondents' response in opposition, (ECF 22), it is hereby **ORDERED** that the motion to enforce is **DENIED**.[1]

---

[1]   On November 3, 2025, Mr. Kumar, a citizen of India, filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241, challenging his October 28, 2025 detainment at the Federal Detention Center in Philadelphia, Pennsylvania, ("FDC"), by United States Immigration and Customs Enforcement, ("ICE"). Mr. Kumar filed the petition against: Brian McShane, Field Office Director of Enforcement and Removal Operations for the ICE Philadelphia Field Office; Kristi Noem, Secretary of Homeland Security; Pamela Bondi, U.S. Attorney General; and Jamal Lawrence, Warden of Philadelphia Federal Detention Center, (collectively, the "Government"). Mr. Kumar argued that his detention was in violation of the Immigration and Nationality Act, ("INA"), its various regulations, and the Due Process Clause of the Fifth Amendment of the United States Constitution. On December 23, 2025, this Court granted, *in part*, Mr. Kumar's *habeas* petition and directed the Government to, *inter alia*, provide Mr. Kumar a bond hearing pursuant to 8 U.S.C. § 1226(a), ("Section 1226(a)"), within five days of the Order and an opportunity to appeal any denial of bond to the Board of Immigration Appeals, ("BIA"). (*See* ECF 11).

Consistent with this Order, the Government scheduled a bond hearing for Mr. Kumar on December 29, 2025, at which time Immigration Judge, ("IJ"), Tamar Wilson denied Mr. Kumar bond, finding he presented a flight risk. (ECF 13-1 at p. 1). Mr. Kumar reserved his right to appeal the denial decision and IJ Wilson set the appeal due date for January 29, 2026. (*Id.* at p. 2). Mr. Kumar appealed IJ Wilson's bond determination to the BIA, where it remains pending. (*See* ECF 15, First Joint Update, at ¶¶ 3-4). Mr. Kumar also requested a custody redetermination hearing pursuant to 8 C.F.R. 1003.19(e). (*See* ECF 17). At that hearing, IJ Leila Mullican refused to disturb the initial bond determination, finding that there had been "[n]o change in circumstances[.]" (*Id.* at pp. 5-9). On February 9, 2026, IJ Wilson issued a written order consistent with the findings made at the December 29, 2025 bond hearing. (ECF 21-1 at pp. 2-4).

In his underlying motion to enforce the December 23, 2025 Order, Mr. Kumar argues that his bond hearing before IJ Wilson "did not comply with due process requirements," and, as such, he should be released from custody. (ECF 21 at p. 1). Specifically, he contends that: (1) his "bond hearing did not comport with due process"; (2) the Government is "systematically denying bond after *habeas* relief"; and (3) IJ Wilson should have placed the burden to prove that bond was appropriate on the Government. (*Id.* at pp. 2-7). In response to Mr. Kumar's motion to enforce, the Government argues that the BIA is the appropriate forum for Mr. Kumar to address the issues regarding his bond hearing, and that his bond hearing was fundamentally fair. (ECF 22 at pp. 5-8). Mr. Kumar's arguments will each be addressed.

*Jurisdiction*

A writ of *habeas corpus* is a mechanism by which someone who is held unlawfully in the custody of a government may challenge the legality of his or her detention. This right to challenge one's unlawful detention is afforded to every person within the United States, guaranteed by the United States Constitution. *See* U.S. Const. Art. I, § 9 cl. 2. A federal district court is authorized to grant a writ of *habeas corpus* under 28 U.S.C. § 2241 when the petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution and/or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). The burden is on the *petitioner* to show that his detention/custody is in violation of the Constitution and/or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Congress may set limits on federal jurisdiction. *See Novo Nordisk Inc. v. Sec'y United States HHS*, 154 F.4th 105, 111 (3d Cir. 2025) ("[W]e must give effect to Congress's will to set the limits of federal jurisdiction."). As such, 8 U.S.C. § 1226(e), ("Section 1226(e)"), provides that:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the grant, revocation, or denial of bond or parole.

However, Section 1226(e) does not limit *habeas* jurisdiction over constitutional claims. *See Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[Section 1226(e)] does not limit *habeas* jurisdiction over constitutional claims or questions of law."); *see also Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008) ("[T]his section . . . does not deprive us of our authority to review statutory and constitutional challenges.").

Therefore, to the extent that Mr. Kumar requests that this Court review IJ Wilson's "discretionary judgment" in denying him bond, this Court declines to do so. However, this Court may review Mr. Kumar's constitutional due process claims and will do so.

*Exhaustion*

Petitioners seeking *habeas* review pursuant to § 2241 "are ordinarily required to exhaust their administrative remedies[.]" *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). "Even if [a] statute does not require exhaustion, courts may, prudentially, require exhaustion." *United States v. Dohou*, 948 F.3d 621, 628 (3d Cir. 2020); *see also Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) ("It is a basic tenet of administrative law that a plaintiff

2

must exhaust all required administrative remedies before bringing a claim for judicial relief."). However, prudential exhaustion may be excused "when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights." *Dohou*, 948 F.3d at 628-29 (internal quotation marks omitted) (quoting *Susquehanna Valley All. v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 245 (3d Cir. 1980)).

Here, Mr. Kumar has not fully exhausted his administrative remedies as his appeal of the denial of bond is pending before the BIA. From the BIA, the appeal process is to the appellate court, not the district court. Despite not having exhausted his administrative remedies, this Court must determine whether the alleged due process violations that Mr. Kumar contends rises to the level of "clear and unambiguous violation[s] of . . . constitutional rights" that justify excusing prudential exhaustion. It does not.

*Due Process Requirements of IJ Bond Hearings*

Mr. Kumar argues that his bond hearing did not comport with due process because, *inter alia*: (a) his attorney was only informed of the bond hearing four hours prior to the commencement of the hearing; (b) IJ Wilson's decision was premeditated given her lack of preparation; and (c) he was not provided an interpreter. (ECF 21 at pp. 2-4).

"The Fifth Amendment protects the liberty of all persons within our borders, including [noncitizens] in immigration proceedings who are entitled to due process of law — that is, a meaningful opportunity to be heard — before being deported." *Amos v. Att'y Gen*, 157 F.4th 313, 323 (3d Cir. 2025) (alteration in original) (quoting *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 211 (3d Cir. 2017)). The Fifth Amendment "entitles a petitioner to (1) factfinding based on record evidence produced before the IJ and disclosed to the petitioner; (2) the ability to make arguments on his or her own behalf; and (3) the right to 'an individualized determination of [his/her] interests.'" *Id.* (alteration in original) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001)).

"A noncitizen asserting a due process violation must generally show (1) 'that he was prevented from reasonably presenting his case,' and (2) 'that substantial prejudice resulted.'" *Freza v. Att'y Gen*, 49 F.4th 293, 298 (3d Cir. 2022) (quoting *Serrano-Alberto*, 859 F.3d at 213). "To show substantial prejudice, the noncitizen must establish 'that the infraction ha[d] the *potential* for affecting the outcome' of their removal proceedings." *Id.* (alteration and emphasis in original) (quoting *Serrano-Alberto*, 859 F.3d at 213).

At a bond hearing, "[t]o determine whether a [noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). "The nine factors an IJ 'may' consider 'include any or all of the following:'

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or

> otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*Id.* (quoting *Guerra*, 24 I. & N. Dec. at 40).

Here, the Government provided Mr. Kumar with his statutorily and constitutionally required bond hearing within the timeframe that this Court required. Consistent with this Court's December 24, 2025 Order, Mr. Kumar was on notice from that the Government would be scheduling a bond hearing within five days from the issuance of the Order. (*See* ECF 11). Mr. Kumar was represented by counsel at the bond hearing. (ECF 21-1, Taylor S. Adams, Esquire, Aff., at p. 1). Through his counsel, Mr. Kumar presented evidence to establish that he was neither a danger to the community, nor or a flight risk. It appears that in applying the specific facts of Mr. Kumar's case to the *Guerra* factors, IJ Wilson determined that Mr. Kumar "lack[ed] any incentive to appear for immigration proceedings," and, thus, was a flight risk because of: his "limited ties to the community;" his recent entry into the United States; the fact that his wife and children still lived in India; and his "speculative" asylum claims. (ECF 21-1 at pp. 3-4).

Based on the foregoing events, Mr. Kumar has offered no evidence or reason to find that this bond hearing and the resultant decision by IJ Wilson failed to comply with the due process under the Fifth Amendment for a Section 1226(a) bond hearings. *See Amos*, 157 F.4th at 323. Additionally, Mr. Kumar has not demonstrated an inability to present his case or that his lack of an interpreter, the four-hour notice of the bond hearing, or IJ Wilson's limited time hearing the facts of his case substantially prejudiced the outcome of his bond hearing. *See Serrano-Alberto*, 859 F.3d at 213. Thus, while the Court notes the hasteful nature of Mr. Kumar's bond hearing, it finds that the proceeding met the due process requirements of the Constitution.

### *Systemic Denial of Bond after Habeas Relief*

Mr. Kumar, relying on the affidavits of a former immigration judge and a former Department of Homeland Security employee, (*see* ECF 21-1 at pp. 7-15), also contends that the Government "has been denying . . . bond requests systematically due to 'flight risk' concerns" and, as such, he "will not get a fair hearing before a neutral arbiter[.]" (ECF 21 at pp. 4-5). As noted, Congress has limited the court's ability to set aside bond decisions. *See* 8 U.S.C. § 1226(e). This Court also understands that "the question for due process purposes is not whether the [IJ] reached the correct decision; rather, it is simply whether the [IJ] made an individualized determination of [Mr. Kumar's] interests." *See Abdulai*, 239 F.3d at 550. Because Mr. Kumar has been provided a bond hearing pursuant to this Court's Order, and IJ Wilson made an individualized determination based on a specific finding of facts on Mr. Kumar's case, this Court does not find that the alleged systemic bond denials rise to the level of a clear violation of *his* due process rights. Accordingly, this argument is without merit.

### *Burden in Section 1226(a) Bond Hearings*

Finally, Mr. Kumar argues that, because "Section 1226(a) is silent as to what burden of proof applies in bond hearings and who bears that burden" and this Court initially found that his detention prior to the bond hearing violated his due process rights, the burden of demonstrating whether he was a flight risk should have been on the Government. (ECF 21 at pp. 6-7). Mr. Kumar is mistaken. In Section 1226(a) bond hearings, "the burden remains on the detainee at all times." *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018). Having directed the Government to provide Mr. Kumar a bond hearing in conformity with Section 1226(a), this

4

BY THE COURT:

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

Court finds no issue that IJ Wilson placed the burden on Mr. Kumar to prove he was not a flight risk.

      In conclusion, this Court's December 23, 2025 Order required the Government to provide Mr. Kumar a bond hearing pursuant to Section 1226(a). The Government complied with that Order when it provided Mr. Kumar a bond hearing on December 29, 2025. Thus, technically, there is nothing to enforce. Mr. Kumar appealed the denial of a bond decision to the BIA, which is still pending. Mr. Kumar having failed to exhaust his administrative remedies, *Moscato*, 98 F.3d at 760, and this Court finding no "clear and unambiguous violation[s] of . . . constitutional rights[,]" *see Dohou*, 948 F.3d at 628-29, the motion to enforce and the request to release him from detention, is denied.

5